IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

Thomas F. Worthy, etc., et al.          Case No. 17 CV 73

        Plaintiffs,          MEMORANDUM OPINION
                                                            AND ORDER
    -vs-
                                                           JUDGE JACK ZOUHARY

The City of Phenix City, Alabama, et al.,

        Defendants.

## INTRODUCTION

Pending is Defendants' Motion to Dismiss, which has been fully briefed (Docs. 8–9, 15–16, 20–21). Defendants argue the Complaint should be dismissed under Federal Civil Rule 12(b)(1) because Plaintiffs lack standing to assert claims based on a lack of due process. They further argue that all of Plaintiffs' claims should be dismissed under Federal Civil Rule 12(b)(6) because the ordinance in question provides a civil rather than criminal penalty, and the process provided by Phenix City is adequate as a matter of law. Plaintiffs contend they have standing, that this Court should not determine whether the penalty is civil or criminal at this stage of the proceedings, and that their allegations are sufficient to support their claims.

## BACKGROUND

In 2012, Phenix City adopted Ordinance No. 2012-21, as part of its "Red Light Safety Program." The Ordinance established an automated system for issuing red-light citations using cameras installed at various intersections throughout the City. Subject to a handful of affirmative

defenses, the owner of a vehicle photographed running a red light in the City is liable for a $100 "civil penalty."

A notice of violation issued under the Ordinance must provide, among other things, information about the owner's right to contest the civil penalty in an administrative adjudication. A request for an administrative adjudication must be made in writing, after which the City sets a hearing. The burden of proof at that hearing -- held before a "hearing officer" -- is a preponderance of the evidence. Such evidence may be introduced through affidavit; thus, the City is not required to produce a live witness to prove its case, and the owner of the vehicle is therefore not guaranteed an opportunity to cross-examine City witnesses.

If an owner is found liable after the administrative hearing -- or if the owner fails to appear at the hearing -- an additional $25 fee is assessed for costs. Owners found liable at the administrative hearing may then appeal that finding to the Circuit Court of Russell County, which in turn conducts a trial *de novo*. If the court finds that the owner is not responsible for a violation, court costs are not assessed, and no costs are owed to the City for the administrative hearing. In other words, no fees or costs are owed in the event of a successful challenge.

Each of the named Plaintiffs received a notification of violation under the Ordinance, and each disputes liability. Nevertheless, Plaintiffs Willcox-Lumpkin Co., Inc. and James D. Adams did not request an administrative hearing or otherwise participate in the statutory process for contesting liability. Plaintiff Worthy received an administrative hearing (at which he was found liable), but he elected not to pursue an appeal to the Circuit Court.

Plaintiffs instead filed this proposed class action, alleging that Defendants violated their constitutional rights and unjustly enriched themselves by imposing criminal fines without providing

2

constitutionally required protections. More specifically, they contend -- among other things -- that the burden of proof should be beyond a reasonable doubt, that they should be allowed to confront their accusers and cross-examine witnesses, and that they should receive greater protections against self-incrimination. They further argue that the City deprived them of both due process and the right to petition the courts. They seek damages, attorney fees, and a declaratory judgment stating that the Ordinance is unconstitutional.

### STANDARDS OF REVIEW

To survive a motion to dismiss brought under Federal Civil Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible only if it provides enough facts on which this Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The standard of review for a motion based on a facial challenge to subject-matter jurisdiction brought under Rule 12(b)(1) is similar to the standard under Rule 12(b)(6). That is, under Rule 12(b)(1), the complaint must contain sufficient factual matter, accepted as true, to establish federal jurisdiction. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).

In considering a motion under Rule 12(b), this Court is generally limited to considering the complaint and its attachments. Nevertheless, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997). Moreover, this Court may consider facts or documents that are subject to

judicial notice. *See* Federal Evidence Rule 201; *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed."). Thus, the documents attached to the Motion to Dismiss -- including the Ordinance, HB75 (the Enabling Act), and the Notice of Traffic Violation issued to each named Plaintiff -- may be considered without converting the Motion to one for summary judgment.

## DISCUSSION

Defendants argue that Plaintiffs' claims should be dismissed under Rule 12(b)(1) because Plaintiffs lack standing to make claims alleging due process violations. This lack of standing, according to Defendants, results from the fact that Plaintiffs did not fully avail themselves of the procedures they now claim are deficient. In addition, Defendants argue that Plaintiffs' claims should all be dismissed under Rule 12(b)(6) because they are premised on a constitutional violation, and the City's procedures are -- as a matter of law -- constitutional.

This Court may not consider the merits of Plaintiffs' claims under Rule 12(b)(6) until it is satisfied Plaintiffs have standing to assert those claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Federal courts do not have jurisdiction over cases in which plaintiffs lack standing. *See Stalley*, 524 F.3d at 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction."). To establish standing under Article III of the Constitution, Plaintiffs must show: (1)

"an injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). At issue in this case is whether Plaintiffs can satisfy the first two elements. Defendants argue that Plaintiffs fail in this regard because they did not fully avail themselves of the statutory procedure to contest the citations -- thus, they cannot claim the procedure caused a cognizable injury.

The Eleventh Circuit has not addressed this question, and other courts are split on this issue. In *Herrada v. City of Detroit*, 275 F.3d 553 (6th Cir. 2001), plaintiff received a parking ticket and -- instead of challenging the ticket through the statutory process -- paid the fine. She later filed a class action alleging that the municipality's ticketing practice deprived her of property without due process. In its analysis, the Sixth Circuit held that plaintiff "lack[ed] standing to argue that hearings are not held despite requests by vehicle owners, because she elected to pay the fine rather than request a hearing." *Id.* at 558.

In *Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617 (6th Cir. 2009), the court again addressed this issue, this time in the context of a red-light system similar to the one at issue in this case. There, plaintiff's vehicle was photographed running a red light, and plaintiff received a $50 citation. *Id.* at 618. The citation informed her that she could request a hearing, but if she did, she would be assessed a non-refundable $67.50 "court processing fee." *Id.* Instead of requesting a hearing, plaintiff took no action and later filed suit alleging that the procedures used to conduct citation challenges violated due process. *Id.* The district court dismissed for lack of standing. *Id.* The Sixth Circuit disagreed, but only because the up-front, non-refundable $67.50 "court processing

5

fee" was improper. *Id.* at 620. Indeed, no rational person would pay a non-refundable fee of $67.50 for the opportunity to contest a $50 fine. *Id.* at 621. Thus, plaintiff was effectively denied any opportunity to contest the citation. Importantly, the court agreed that absent the improper fee, plaintiff would lack standing:

> [Plaintiff] contends that the procedures Tennessee provides for citation hearings are constitutionally inadequate. Yet she has not yet experienced the procedures she challenges, and so, at first blush, it appears difficult to question the district court's conclusion that [Plaintiff] lacked standing; without having been injured by these procedures, she resembles a mere outsider with a non-justiciable "general grievance."

*Id.* at 620 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient for standing to invoke the federal judicial power.").

Several district courts outside the Sixth Circuit, including one in Alabama, have agreed with the Sixth Circuit's approach. *See, e.g.*, *Stubbs v. City of Ctr. Point*, 988 F. Supp. 2d 1270, 1277–78 (N.D. Ala. 2013) ("[W]hile payment of the fine could be considered an injury, [plaintiff's] injury is not causally connected to the conduct of which she complains because she paid her fine without taking advantage of the process provided by the City to challenge it. Even if that process were insufficient to satisfy constitutional standards, it did not cause [plaintiff] to voluntarily pay her fine; no traceable connection exists."); *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 710 (M.D.N.C. 2003) ("Plaintiff does not have standing to challenge the conduct of Defendants because he has failed to show 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'") (quoting *Heckler v. Mathews*, 465 U.S. 728, 738 (1984)); *Walter v. City of Chicago*, 1992 WL 88457, at *3 (N.D. Ill. 1992) ("[Plaintiff] cannot trace any deprivation

6

or threatened deprivation of property to any of the adjudicative procedures (as outlined in both the ordinance and the enabling statute) that he questions because he never made use of them.").

The Eighth Circuit, however, has held that plaintiffs who receive citations have standing to challenge procedures for contesting those citations, even if they have not utilized those procedures. In *Hughes v. City of Ceder Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016), the court implicitly rejected the Sixth Circuit's approach (without addressing any Sixth Circuit cases on the issue):

> Determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided. Otherwise, in order to have standing, a plaintiff would always have to show the inadequacy of the due process—the central claim.
>
> The district court here addressed the substance of the due process argument as part of the standing analysis. The allegations that the procedure is inadequate—even if drivers shun it—sufficiently establishes an injury in fact for Article III standing.
>
> [Plaintiffs] also satisfy the causation and redressability requirements. The drivers' alleged injury is inadequate process directly traceable to the City and [the other defendant]. If the court awards damages, their claims are redressed.

*Id.* at 993–94 (citations omitted). And several district courts outside of the Eighth Circuit have followed this approach. *See, e.g.*, *Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 423–24 (D. Md. 2012) ("[T]hose plaintiffs who elected not to stand trial have failed to state a cognizable claim, as it is difficult to see how the alleged deprivations of due process that occurred in the District Court somehow injured the plaintiffs who elected not to appear in that court. That, however, is an argument to be raised on a motion under Rule 12(b)(6) rather than Rule 12(b)(1). For standing purposes, it is sufficient to allege that the threatened deprivation of adequate procedures itself caused an injury."); *Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 599 (E.D. La. 2008) ("[T]his Court would be remiss if it incorporated an assessment of the adequacy of . . . adjudication

7

procedures, or the plaintiff's failure to take advantage of those procedures, into its standing analysis.").

This Court agrees with the approach taken by the Sixth Circuit. The Eighth Circuit's approach suffers from a flawed premise -- that inadequate process, by itself, is an injury capable of conferring standing. *See Hughes*, 840 F.3d at 994 ("The drivers' alleged *injury is inadequate process* directly traceable to the City.") (emphasis added). But "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Put differently, "[t]here is no abstract federal constitutional right to process for process's sake. Rather, the Fourteenth Amendment provides that one may not be deprived of life, liberty, or property without due process of law." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). As such, the mere deprivation of process is not itself a constitutionally cognizable injury; rather, the injury must involve the deprivation of life, liberty, or property. And that injury must then be traceable to the challenged process.

To have standing to complain about the City's contest procedures, Plaintiffs' injuries must be based on an erroneous deprivation of property caused, at least in part, by the City's allegedly inadequate process. In other words, if Plaintiffs received a citation in error and were forced to pay a fine because the process provided by the City was not adequate to correct that error, they could bring a claim alleging a violation of due process. They cannot, however, assert a constitutional claim alleging nothing more than that the City's process is inadequate.

All of this is to say that this Court finds Plaintiffs do not have standing to assert a due process claim in this case, because they cannot trace any injury to a process which they failed to utilize. There is no way to know whether the City's process *would have been* adequate to correct a citation received

8

in error, because the City's process was not followed. At best, Plaintiffs could speculate that the City's process ultimately would have proved inadequate. But that is not a plausible basis for standing. *Cf. Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *see also Stalley*, 524 F.3d at 1232 (noting similarity between pleading standards for jurisdictional and merits-based facts).

Further, Plaintiffs' (and the Eighth Circuit's) objection that such a holding impermissibly wades into the merits of Plaintiffs' claims is misplaced. *See Hughes*, 840 F.3d at 993–94 ("Determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided. Otherwise, in order to have standing, a plaintiff would always have to show the inadequacy of the due process—the central claim.") (citations omitted). In assessing standing, this Court does not, and indeed cannot, address the adequacy of the process provided; rather, it assesses only whether Plaintiffs alleged facts suggesting there is a causal connection between the process of which they complain -- adequate or otherwise -- and any erroneous deprivation of a protected interest. *See Lujan*, 504 U.S. at 560–61. Thus, this case is also distinguishable from the cases Plaintiffs cite where the Eleventh Circuit held that standing and merits issues were impermissibly conflated.

For example, in *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306–07 (11th Cir. 2008), the district court based its standing ruling on its interpretation of a disputed insurance policy. The Eleventh Circuit noted that plaintiffs alleged they had a home covered by the policy, the home was damaged by a covered event, plaintiffs made a claim under the policy, and defendant paid less than what plaintiffs were owed. *Id.* Thus, plaintiffs alleged facts indicating they "suffered a concrete, particularized injury that [was] caused by the challenged action of the defendant." *Id.* (quoting *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1273–74 (11th Cir. 2001)). Whether the withheld

9

payments were ultimately covered by the policy was an issue going to the merits of plaintiffs' claim; it wasn't a question of whether plaintiffs had standing to allege a claim. *Id.* Here, in contrast, Plaintiffs have not alleged facts suggesting they suffered an injury that was *caused by* the City's procedure for contesting citations.

In *Wooden*, the Eleventh Circuit noted that the Supreme Court has defined the "injury-in-fact" element of standing in equal-protection cases as "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." 247 F.3d at 1279 (quoting *Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Thus, equal-protection claims involve a free-standing right to equal treatment, the violation of which is its own injury. This means standing in an equal-protection case requires only that the claimant allege he or she was exposed to unequal treatment as a result of the challenged policy, for which the injury can be redressed. Whether and what damages ultimately flow from the unequal treatment -- that is, whether defendants can ultimately prove plaintiff would not have received the benefit even without the unequal treatment -- is an issue that goes to merits rather than standing. *Id.* at 1280–81. Because plaintiffs in *Wooden* alleged an injury (unequal treatment) that was inherently caused by defendant's race-based admissions process, they had standing to assert an equal-protection claim. Here, in contrast, Plaintiffs have no free-standing right to adequate process. Thus, potential exposure to the City's allegedly inadequate process is not -- by itself -- a constitutionally cognizable injury.

Finally, Plaintiffs' argument that standing "does not require a plaintiff to wait until an injury occurs to bring suit" -- while an accurate description of the law in certain circumstances -- is not persuasive in this case. The cases Plaintiffs cite for that proposition deal with circumstances in which

a person is faced with an imminent threat of liability *because of* an unconstitutional law or policy. In such circumstances, plaintiffs are not required to violate the unconstitutional law or policy (thus exposing themselves to liability) before challenging it in court. Here, Plaintiffs are not faced with deciding whether to violate an unconstitutional law or policy; they are obligated to avoid running red lights regardless of the constitutionality of the procedures for contesting citations. Further, they do not face an imminent threat of liability *because of* the procedures of which they complain.

## CONCLUSION

This Court finds Plaintiffs have no standing to challenge the City's procedure for contesting a citation. Indeed, there may be drivers who were cited in error and who unsuccessfully challenged their citations through that procedure, but none of those drivers is a named Plaintiff in this case. The Motion to Dismiss (Doc. 8) is therefore granted as to all claims challenging the City's procedure for contesting citations issued under the Ordinance.

IT IS SO ORDERED.

                                                        s/ *Jack Zouhary*
                                             JACK ZOUHARY
                                             U. S. DISTRICT JUDGE

October 6, 2017